ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
VICTOR FRANCIS,
:     **OPINION AND ORDER**
          **Plaintiff,**
:     06 Civ. 249 (SAS)
   -against-
:
ERIK ZAVADILL, employee at Green Haven
Correctional Facility - Department of           :
Correctional Services, SID JOHNSTON, Green
Haven Correctional Facility, and JOHN           :
RAPP'S, Green Haven Correctional Facility,
:
          **Defendants.**
------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

    Victor Francis, proceeding pro se, brings suit under 42 U.S.C. § 1983 ("section 1983") against defendants State of New York Department of Correctional Services ("DOCS") Green Haven Correctional Facility Cook Erik Zavadil, Food Administrator II Sidney Johnston, and Food Services Administrator John Rapp.[1] Francis alleges that food served to inmates at the Green Haven Correctional Facility ("Green Haven"), such as mashed potatoes, was contaminated with aluminum fibers and metal splinters from a faulty can opener.[2]

---

   [1] Sued incorrectly herein as "John Rapp's."

   [2] *See* Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 ("Complaint"), Statement of Claim, annexed to Section II. Nowhere does plaintiff allege that he ingested contaminated food. In fact, in his Opposition plaintiff states: "I stop

Although plaintiff states that he has "[n]o visible injuries as yet,"[3] he seeks $100,000,000 in compensation and punitive damages, as well as injunctive relief requiring Johnston to buy a new and different can opener.[4] Defendants have

---

eating mashed potatoes on[ce] I saw aluminum fibers and metal splinters in the food in July of 2005." Plaintiff's Affidavit/Affirmation in Opposition ("Pl. Opp."), dated July 22, 2006, at 28. Thus, the question arises as to whether plaintiff has standing to bring this claim on behalf of other inmates where he sustained no injuries of his own. *See id.*, Section V (seeking damages for "actual and potential harm and serious health hazards *they will suffer* as a result of the defendant[s'] activ[ities]") (emphasis added). Because this case can be dismissed on an alternative ground, I need not reach this issue. It is highly unlikely, however, that plaintiff has made out a "case or controversy" within the meaning of Article III of the United States Constitution. As stated by the Supreme Court,

> As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Baker v. Carr*, 369 U.S. 186, 204 (1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .' *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973).

*Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (parallel citations and footnote omitted).

[3]   Complaint, Section III.

[4]   *See id.*, Section V.

moved to dismiss, *inter alia*, for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Plaintiff opposes this motion.[5] For the following reasons, defendants' motion is granted and this case is dismissed.

I.  **FACTS**

   A.  **The Allegedly Contaminated Food**

Plaintiff alleges that on July 25, 2005, while working at Green Haven's mess hall, he served inmates mashed potatoes prepared by Zavadil from a can.[6] In the course of recycling empty cans of mashed potatoes, plaintiff noticed aluminum fibers on his hands.[7] When he looked inside one of the cans, he saw aluminum fibers mixed with the powdered mashed potatoes.[8] Plaintiff called Zavadil to the area where he was working and showed him what he had found.[9] Zavadil, who allegedly responded that there was nothing he could do because the cans were already opened, continued to serve the mashed potatoes that he had

---

[5]  In addition to the aforementioned Affidavit/Affirmation, I also considered an affidavit dated September 5, 2006 as part of plaintiff's opposition, given his status as a pro se litigant. I also reviewed plaintiff's numerous handwritten letters.

[6]  *See* Complaint, Statement of Claim, at 1-2.

[7]  *See id.* at 1.

[8]  *See id.*

[9]  *See id.*

3

prepared.[10] When asked why he was continuing to serve the contaminated mashed potatoes, Zavadil told plaintiff that he did not have anything to serve in place of the mashed potatoes.[11] Zavadil informed plaintiff that the manual can opener he was using would be repaired.[12]

On September 11, 2005, a new blade was inserted into the can opener, but this did not prevent canned food from being contaminated with aluminum fibers and metal splinters.[13] When plaintiff informed Zavadil that the can opener had not been fixed properly, Zavadil responded that the matter had been brought to the attention of Johnston and Rapp.[14] According to plaintiff, Zavadil stated that the replacement of the can opener was out of his hands because it was a "money thing."[15]

While eating lunch at some later date, several mess hall workers discovered metal splinters in their pizza, which had been served to the prison's

---

[10] *See id.*

[11] *See id.* at 2.

[12] *See id.*

[13] *See id.*

[14] *See id.*

[15] *Id.*

general population.[16]  The source of the splinters was the can opener used to open cans of tomato sauce.[17]  This matter was brought to the attention of another cook, Lorie Badgers, who told Johnston that aluminum fibers and splinters were contaminating the food.[18]  In October 2005, Johnston replaced the can opener with another manual can opener of the same style.[19]

The problem continued.  On November 14, 2005, plaintiff noticed the presence of aluminum fibers in mashed potatoes that came from a can opened with the new can opener.[20]  According to plaintiff, the problem could be rectified by replacing the manual can opener with an electric one.[21]  Plaintiff claims he told both Johnston and Zavadil that an electric can opener was needed.[22]  In response, Johnston and Zavadil allegedly told plaintiff that they did not have the money for an electric can opener and were not going to buy one.[23]

---

[16] *See id.*

[17] *See id.*

[18] *See id.* at 2-3.

[19] *See id.* at 4.

[20] *See id.*

[21] *See id.* at 3-4.

[22] *See id.*

[23] *See id.* at 4.

## B.  Exhaustion of Administrative Remedies

Plaintiff claims that he filed a grievance regarding the can opener's contamination of food with aluminum fibers and metal splinters.[24] However, there is no such grievance on record. Green Haven maintains files of inmate grievances in accordance with DOCS Directive # 4040.[25] Directive #4040 requires facilities to record all grievances filed by inmates in grievance files and logs which are maintained for the current year and the previous four calendar years.[26] The only grievance on record filed by plaintiff, GH-50273-02, is a grievance concerning dental treatment dated November 20, 2002.[27] Furthermore, the Central Office Review Committee ("CORC") also maintains files of appealed grievance decisions in accordance with Directive # 4040.[28] A review of the CORC database reveals

---

[24]  *See id.*, Section IV, paragraph E.

[25]  *See* Declaration of Josh Krom ("Krom Decl."), Inmate Grievance Program Supervisor at Green Haven, ¶ 2.

[26]  *See id.*

[27]  *See id.* ¶ 3 and Ex. A.  Plaintiff submitted a copy of this grievance to the Court to prove that he "know[s] how to put in Grievance."  8/30/06 Letter to the Court at 1 and Ex. 1.

[28]  *See* Declaration of Thomas Egan, Director of DOCS Inmate Grievance Program, ¶ 2 ("The CORC computer database contains records of all appeals received from the facility Inmate Grievance Program Offices . . . heard and decided by CORC since 1990.").

6

that the only grievance plaintiff appealed to CORC was the same grievance concerning dental work, which was disposed of by CORC on January 29, 2003.[29] Plaintiff did not submit a copy of his alleged grievance as part of his opposition.[30]

Instead of filing a formal grievance, it appears that plaintiff wrote a letter to DOCS Commissioner Glenn S. Goord on February 15, 2006, complaining of the can openers used at Green Haven.[31] This letter was referred to DOCS Director of Nutritional Services, Howard Dean.[32] Dean sent plaintiff a letter dated March 24, 2006, informing him that the "Regional Coordinator investigated your concern and found that the can openers are in good repair."[33] Plaintiff sent Goord another letter[34] to which Dean responded with a letter dated April 24, 2006.[35] This letter states that the "Regional Coordinator and Food Service Administrator

---

[29] *See id.* ¶ 3 and Ex. A.

[30] Plaintiff submitted a grievance complaining of metal shavings in food by another inmate, Walter Alston, # 98-A-2554. However, this grievance, and the Affidavit of Walter Alston dated August 18, 2006, have no legal relevance to this action.

[31] *See* Pl. Opp., Ex. 1.

[32] *See id.*, Ex. 3.

[33] *Id.*

[34] *See id.* at 7.

[35] *See id.*, Ex. 2.

investigated your concerns while at site visits and found no problems with the can openers."[36] Plaintiff sent a third letter, dated May 2, 2006, which Dean responded to on May 30, 2006.[37] Dean's letter assured plaintiff that "we do everything possible to protect inmate food by using federally approved commercial can openers."[38]

## II. LEGAL STANDARDS

### A. Motion to Dismiss - In General

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[a] court may not dismiss an action 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[39] The task of the court in ruling on a motion to dismiss is "merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[40] "Thus, '[t]he issue is not

---

[36] *Id.*

[37] *See* 7/30/06 Letter to this Court, Ex. 2.

[38] *Id.*

[39] *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 590 (2d Cir. 2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[40] *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004) (internal quotation marks and citation omitted).

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"[41]

Furthermore, a complaint need not state the legal theory, facts, or elements underlying the claim.[42] Pursuant to the simplified pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must include only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[43] Under that pleading standard, "a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests."[44]

When deciding a motion to dismiss, courts must accept all factual allegations as true and draw all reasonable inferences in the non-moving party's

---

[41] *York v. Association of Bar of City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[42] *See Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005). *See also Simpson v. Nickel*, No. 05-4686, 2006 WL 1585445, at *1 (7th Cir. June 12, 2006) ("One pleads 'claims' (which is to say, grievances) rather than legal theories and factual specifics.").

[43] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). *See also Simpson*, 2006 WL 1585445, at *1 (stating that *Swierkiewicz's* holding that plaintiffs need not allege either the factual or legal elements of a prima facie case under the employment discrimination laws is "equally applicable to every other federal claim").

[44] *Leibowitz*, 445 F.3d at 591.

favor.[45] And when a plaintiff is proceeding pro se, courts are instructed to construe the complaint liberally.[46] This is particularly important where a pro se plaintiff alleges a civil rights violation.[47]

Finally, while courts generally may not consider matters outside the pleadings in determining if a complaint should survive a Rule 12(b)(6) motion, documents attached to the pleadings, documents referenced in the pleadings, and documents integral to the pleadings may be considered.[48] Courts may also take judicial notice of facts within the public domain and public records if such facts and records are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[49]

---

[45] *See id.* at 590 (citing *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

[46] *See Phillips*, 408 F.3d at 128 ("But as low as the requirements are for a complaint drafted by competent counsel, we hold *pro se* complaints to an even lower standard.") (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)).

[47] *See Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002).

[48] *See Chambers*, 282 F.3d at 152-53; Fed. R. Civ. P. 10(c).

[49] Fed. R. Evid. 201(b)(2). *See also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) ("[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (quoting Fed. R. Evid. 201(b)(2)).

## B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions.[50] The PLRA's exhaustion requirement is mandatory.[51] Failure to exhaust is an absolute bar to an inmate's action in federal court: "§ 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all*."[52] Because the plain language of section 1997e(a) states "no action shall be brought," an inmate must have exhausted his claims at the time the initial complaint was filed as "[s]ubsequent exhaustion after suit is filed . . . is insufficient."[53] Furthermore, the United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

---

[50] *See* 42 U.S.C. § 1997e(a) which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

[51] *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001).

[52] *Id.* (quotation marks and citation omitted, emphasis in original).

[53] *Id.*

some other wrong."[54]

Before bringing suit in federal court, an inmate must fully present his claim for internal resolution within the correctional facility and DOCS. This is what is known as the exhaustion requirement. The Inmate Grievance Program ("IGP") is the relevant administrative vehicle in New York.[55] In order to survive a motion to dismiss, an inmate must fully exhaust all administrative remedies, at all

---

[54] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[55] DOCS established the IGP with specific procedures which must be followed in order for a prisoner to exhaust his administrative remedies. *See* N.Y. Correct. Law § 139 (2003) (directing the DOCS Commissioner to establish grievance resolution committees in each correctional facility under his jurisdiction); N.Y. Comp. Codes R. & Regs., tit. 7, § 701.1 (2006) (instituting IGP). The grievance system available to an inmate is a three-step process. First, the formal grievance process is started by an inmate submitting a written complaint on a readily available Inmate Grievance Complaint Form or on plain paper containing a concise, specific description of the problem and the requested action to the Grievance Clerk of the Inmate Grievance Resolution Committee ("IGRC") within 14 calender days of the alleged occurrence. *See* N.Y. Comp. Codes R. & Regs., tit. 7, § 701.7(a)(1) (2006). The second step of the administrative procedure is filing an appeal with the Superintendent of the facility within four working days after receipt of the IGRC's written response. *See id.* § 701.7(b). The third step is to appeal to CORC for a final administrative determination within four working days after receipt of the Superintendent's written response. *See id.* § 701.7(c). The grievance procedures are outlined in the standards of inmate behavior booklets which are routinely distributed to all inmates upon their entrance to a correctional facility. *See Arnold v. Goetz*, 245 F. Supp. 2d 527, 539 (S.D.N.Y. 2003).

levels of appeal.[56] Letters to the DOCS Commissioner, however, cannot take the place of a formal grievance.[57] In sum, an inmate must file a grievance and pursue that grievance through all three levels of the IGP.[58] Thus, an inmate's claim is not exhausted until he appeals to CORC and receives a final decision regarding his grievance.[59] Only upon such a final determination by CORC is an inmate deemed to have exhausted his administrative remedies.[60]

---

[56] *See Mendez v. Artuz*, No. 01 Civ. 4157, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) ("[T]he exhaustion requirement is not satisfied until the administrative process has reached a final result.").

[57] *See Connor v. Hurley*, No. 00 Civ. 8354, 2004 WL 885828, at *2 (S.D.N.Y., Apr. 26, 2004) ("[Plaintiff's] letters to Superintendent Artuz and to Commissioner Goord may not be deemed substitutes for strict compliance with the requirements of the IGP [Inmate Grievance Program].").

[58] *See Khalid v. Reda*, No. 00 Civ. 7691, 2003 WL 42145, at *3 (S.D.N.Y. Jan. 23, 2003) ("An inmate has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure.") (quotation marks and citation omitted); *Petit v. Bender*, No. 99 Civ. 969, 2000 WL 303280, at *3 (S.D.N.Y. Mar. 22, 2000) (holding that prisoner failed to exhaust his administrative remedies where he failed to appeal Superintendent's decision).

[59] *See Wilson v. Keane*, No. 02 Civ. 5256, 2003 WL 22132865, at *1 (S.D.N.Y. Sept. 16, 2003) ("DOCS' regulations require an appeal to be made to the Superintendent and to the Central Office Review Committee ("CORC")."); *Mendez*, 2002 WL 313796, at *2.

[60] *See Sulton v. Greiner*, No. 00 Civ. 727, 2000 WL 1809284, at *4 (S.D.N.Y. Dec. 11, 2000) ("[B]ecause Sulton failed to exhaust his administrative remedies by appealing the grievance to the CORC, his claims of medical indifference will be dismissed pursuant to 42 U.S.C. § 1997e.").

## III.  DISCUSSION

Although the exhaustion requirement clearly applies to plaintiff's claim of deliberate indifference to health and safety, he did not file the requisite grievance regarding the facts that comprise this claim, *i.e.*, that food being served to inmates was contaminated with aluminum fibers and metal splinters.[61] Nonetheless, plaintiff alleges that he filed a grievance alleging that a defective can opener left aluminum fibers and metal splinters in the food consumed by inmates at Green Haven.[62]  Plaintiff then contradicts himself by admitting that he did not file a grievance but that he wrote to Superintendent Robert Ercole "informing him about the situation."[63]  Plaintiff further alleges that Superintendent Ercole responded to his correspondence, advising him that the can opener in question would be monitored to assure proper maintenance.[64]

Accepting plaintiff's self-serving allegations as true, once his alleged grievance was investigated and a decision was issued by Superintendent Ercole, plaintiff should have appealed that grievance to CORC.  Any attempt by plaintiff

---

[61]  *See supra* n.25 (citing Krom Decl.).

[62]  *See* Complaint, Section IV(F)(1).

[63]  *Id.*, Section IV(G).

[64]  *See id.*, Section IV(F)(3).

14

to excuse his failure to appeal by arguing that "as usual grievance [sic] or Superintendent did not investigate the complaint" is without merit.[65] Plaintiff's own statements demonstrate that the grievance appeal procedures were available to him. Plaintiff's failure to appeal the alleged denial of his grievance amounts to a failure to meet the PLRA's exhaustion requirement. For this reason, plaintiff's Complaint must be dismissed.

The Second Circuit does not excuse a failure to exhaust when an inmate admittedly did not appeal to CORC and provides no justifiable explanation for his failure to do so.[66] In his opposition, plaintiff attempts to excuse his failure to meet the exhaustion requirement on the ground that he did not have sufficient time to appeal his alleged grievance because he had only four days to do so.[67] The form used to notify an inmate of the decision concerning his grievance includes an Appeal Statement section. An inmate must complete this section if he intends to appeal the decision of the Superintendent to CORC. The Appeal Statement

---

[65] *Id.*, Section IV(D).

[66] In fact, in a case where an inmate acknowledged that he took "no action" to pursue available administrative remedies and there was no "justification," the Second Circuit dismissed the complaint, with prejudice. *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004).

[67] *See* Pl. Opp. at 2-3.

advises the inmate that he has to state why he is appealing to CORC and that he has to return the statement to his Inmate Grievance Clerk within four days of receipt of the decision in order to file a timely appeal. However plaintiff's attempt to excuse his failure to exhaust by arguing that he did not have sufficient time to appeal because of problems with the law library is without merit. Nor are there any other circumstances that would reasonably excuse him from fully exhausting his grievance by appealing to CORC. Because plaintiff has provided no justifiable explanation for his failure to appeal, this case must be dismissed for failure to exhaust administrative remedies.[68]

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted and this case is dismissed. I hereby certify that any appeal taken will not be in good faith for purposes of 28 U.S.C. § 1915(a)(3). The Clerk of the Court is directed to close this motion (Document #7) and this case.

---

[68] Accordingly, plaintiff's request for injunctive relief is also denied. A permanent injunction may only be issued after a valid adjudication of the merits and a showing of actual success on the merits. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). Because plaintiff's case has been dismissed, his request that Johnston buy the "right" can opener to open cans of mashed potatoes must be denied.

SO ORDERED:

/s/ Shira A. Scheindlin
Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          October 30, 2006

## - Appearances -

### Plaintiff (Pro Se):

Victor Francis
# 98-A-3358
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

### For Defendants:

Jose L. Velez
Assistant Attorney General
120 Broadway
New York, New York 10271
(212) 416-8164